1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
2 | ALYSSA SONES, Cal. Bar No. 318359
CHLOE G. CHUNG, Cal. Bar No. 341398
3 | 1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
4 | Telephone:    310.228.3700
Facsimile:    310.228.3701
5 | Email:        ccardon@sheppardmullin.com
              asones@sheppardmullin.com
6 |           cchung@sheppardmullin.com

7 | *Attorneys for Defendant*
PATAGONIA, INC.

8 |

9 |

10 |

11 |                   UNITED STATES DISTRICT COURT

12 |                 CENTRAL DISTRICT OF CALIFORNIA

13 | MANAL ALEISA, Individually and on Behalf | Case No.   8:22-cv-00195
of All Others Similarly Situated,
14 | | **CLASS ACTION**
15 |              Plaintiff, | **DEFENDANT PATAGONIA, INC.'S**
**NOTICE OF REMOVAL PURSUANT TO**
16 |        v. | **28 U.S.C. §§ 1332, 1441, 1446 AND 1453**
**(CLASS ACTION FAIRNESS ACT)**
PATAGONIA, INC.; and LOST COAST
17 | OUTFITTERS, LLC, | Orange Sup. Ct..
Case No. 2021-01238022-CU-BT-CXC
18 |              Defendants. |
19 | | Complaint Filed:  December 22, 2021
Trial Date:        None set
20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453, and Federal Rule of Civil Procedure, Rule 81(c), Defendant Patagonia, Inc. ("Patagonia"), by and through its counsel, hereby removes the above-captioned matter *Manal Aleisa v. Patagonia, Inc., et al.*, which is currently pending before the Superior Court of the State of California for the County of Orange, Case No. 2021-01238022-CU-BT-CXC (hereinafter the "State Court Action"), to the United States District Court for the Central District of California.[1]  Removal is proper for the following reasons:

## I.    BACKGROUND

1.      Plaintiff Manal Aleisa ("Plaintiff") filed a Complaint in the State Court Action against Patagonia and Defendant Lost Coast Outfitters, LLC ("Lost Coast" and, together with Patagonia, "Defendants"), on December 22, 2021.  Plaintiff served the Complaint on Patagonia on January 6, 2022.

2.      The Complaint asserts the following claims against Patagonia arising from Lost Coast's marketing and sale of Patagonia clothing offering ultraviolet ray protection during the limitations period:  (a) violation of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); (b) violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*); (c) violation of the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*); (d) Negligent Misrepresentation; (e) Intentional Misrepresentation; and (f) Unjust Enrichment.

3.      The nature of the action is more fully stated in the Complaint, a true and correct copy of which is attached hereto as Exhibit A.

## II.    TIMELINESS OF REMOVAL

4.      Under the Class Action Fairness Act ("CAFA"), a defendant sued in state court has thirty days from service of the summons and complaint to file a notice of removal to federal court.

---

[1]  Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings (including the Complaint), and orders served on Patagonia in the State Court Action is attached hereto as **Exhibit A**.

1   28 U.S.C. § 1446(b)(1).  Plaintiff served a copy of the Summons and Complaint in the State Court

2   Action on Patagonia on January 6, 2022.  Ex. A at 51-52.  Thus, this Notice of Removal is timely.

### III.   REMOVAL JURISDICTION UNDER CAFA

4        5.       The Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d).

5   Under CAFA, federal courts have original jurisdiction and removal jurisdiction in class actions

6   where:

7                (a)      any member of the plaintiff class is a citizen of a State different from any

8                         defendant ("minimal diversity");

9                (b)      the primary defendants are not states, state officials, or other government

10                         entities against whom the district court may be foreclosed from ordering

11                         relief;

12                (c)      there are more than 100 people in the putative class; and

13                (d)      the amount in controversy exceeds $5,000,000.00, exclusive of interests and

14                         costs.

15   28 U.S.C. § 1332(d); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir.

16   2007).

17        6.       As set forth below, this action is removable under CAFA because at least one

18   member of the putative class is a citizen of a State different from that of one or more of

19   Defendants (which entities are not states, state officials, or other government entities), there are

20   more than 100 putative class members, and the amount in controversy exceeds $5,000,000.00,

21   exclusive of interest and costs.

22   **A.     Minimal Diversity**

23        7.       Diversity of citizenship is established under CAFA for "a class action in which (A)

24   any member of a class of plaintiffs is a citizen of a State different from any defendant … ."  28

25   U.S.C. § 1332(d)(2).  Thus, only minimal diversity is required, and is satisfied where at least one

26   member of the putative class is a citizen of a state different from the sole named defendant.

27        8.       Defendants are citizens of California:

28

(a)     Plaintiff alleges Patagonia is a California corporation with its principal place of business in Ventura, California, at 259 W. Santa Clara St., Ventura, California, 93001 (Complaint ¶ 19) and, therefore, is a citizen of California. *Ghaderi v. United Airlines, Inc.*, 136 F. Supp. 2d 1041, 1043 n.1 (N.D. Cal. 2001) ("A corporation is a citizen of the state in which it is incorporated and the state that is its principal place of business.").

(b)     Plaintiff alleges Lost Coast is a California limited liability company with its principal place of business in California (Complaint ¶ 11) and, therefore, is a citizen of California.

9.     Plaintiff is a resident and citizen of California. *Id.* ¶ 8. Plaintiff purports to represent a putative "National Class" consisting of "All persons in the United States who purchased a Patagonia Capilene® Cool Daily and Tropic Comfort Product [the "Products"] that did not have the advertised 50+ UPF sun protection, and who did not receive a refund of monies paid within the four years prior to filing the Complaint" (*id.* ¶ 39), as well as a putative "California Sub-Class" consisting of "All persons in California purchased [the Products] that did not have that did not have [*sic*] the advertised 50+ UPF sun protection, and who did not receive a full refund of monies paid within the four years prior to filing the Complaint" (*id.* ¶ 40).

10.     Plaintiff's causes of action arise out of purchases she made in California, but Plaintiff purports to represent a class of "[all] persons in the United States" – whether they reside in California or not – that made similar purchases. *Id.* ¶¶ 13, 15. Patagonia's customers include individuals making purchases in states outside of California. Declaration of Meredith Bell ("Bell Decl.") ¶ 2. The minimal diversity requirement is thus satisfied here because Defendants are citizens of California and at least one member of the putative class is a citizen of another state.

## B.    Entity Status

11.     Both Patagonia and Lost Coast are private companies. *See* Complaint ¶¶ 9-11. Accordingly, the non-governmental entity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(5).

**C.      Class Size**

12.      Plaintiff alleges that the National Class and the California Sub-Class, jointly referred to as the "Classes," "consist of several thousands."  Complaint ¶¶ 45.  Because there is no dispute that the putative class—as defined by Plaintiff—includes more than 100 people, CAFA's class size requirement is satisfied.

**D.      Amount In Controversy**

13.      Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  The aggregate amount in controversy includes claims for damages, the cost of complying with injunctive relief, and attorneys' fees.  *Gugliemino v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007); *Anderson v. SeaWorld Parks & Entm't, Inc.*, 2015 U.S. Dist. LEXIS 128786, at **6-7 (N.D. Cal. Sept. 22, 2015).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.  Where the plaintiff has not demanded a sum certain in the complaint, the defendant must only prove the amount in controversy by a preponderance of the evidence for purposes of determining CAFA removal jurisdiction. *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007); *cf. Gugliemino*, 506 F.3d at 700 (the party seeking removal must "prove with legal certainty" the amount in controversy only when the state court complaint affirmatively alleges an amount in controversy less than the jurisdictional threshold).

14.      The amount in controversy allegation in a notice of removal should be accepted as true when not contested by a plaintiff or questioned by the court. *Dart*, 574 U.S. 81, 87 (2014).  If the court is uncertain about whether all matters in controversy meet the $5,000,000 jurisdictional threshold under CAFA, "the court should err in favor of exercising jurisdiction over the case." *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614, at *19 (C.D. Cal. Nov. 18, 2005). While Patagonia denies that Plaintiff or the putative class members are entitled to any relief, in determining the amount in controversy the Court must assume that allegations in the Complaint

-4-

1　are true and that Plaintiff will ultimately prevail.  *Kenneth Rothschild Trust v. Morgan Stanley*

2　*Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *see also Korn v. Polo Ralph Lauren*

3　*Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) ("the ultimate inquiry is what amount is

4　put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe").

5　　　　　15.　　Plaintiff does not demand a sum certain in the Complaint, but the minimum amount

6　in controversy requirement is nonetheless satisfied.

7　　　　　16.　　Plaintiff alleges that the putative nationwide class includes "[a]ll persons in the

8　United States who purchased [the Products] that did not have the advertised 50+ UPF sun

9　protection, and who did not receive a refund of monies paid within the four years prior to filing the

10　Complaint."  Complaint ¶ 39.  Plaintiff further requests "[a]n Order requiring Defendants to accept

11　returns of the Product by all members of the Classes in exchange for full a refund of all monies

12　paid, for Products purchased during the entire Class Period, including after September 1, 2021."

13　*Id.* at Prayer For Relief (also requesting "[a]n order requiring Defendants to pay restitution to

14　Plaintiff and the Class due to Defendant's UCL violations, pursuant to Cal. Bus. & Prof. Code §§

15　17200-17205 in the amount of the money paid to Defendants not refunded…."); *see also id.* ¶ 138

16　(alleging that Plaintiff and the putative class members are "entitled to seek disgorgement and

17　restitution of wrongful profits, revenue, and benefits conferred upon Defendants...").  In fact,

18　Plaintiff seeks at least $85.80—the total amount she allegedly paid Defendants for a Patagonia

19　Women's Topic Comfort Hoody with UV sun protection.  *Id.* ¶¶ 14-15.  The Civil Case Cover

20　Sheet filed by Plaintiff on December 22, 2021 shows that the "[a]mount demanded exceeds

21　$25,000."  Ex. A at 36.  Patagonia's total sales of the Products during the four-year period before

22　the Complaint was filed, less returns, is greater than $5,000,000.00.  Bell Decl. ¶ 3.  Plaintiff

23　alleges that the class is entitled to "full a refund of all monies paid, for Products purchased during

24　the entire Class Period, including after September 1, 2021…"  Complaint at Prayer for Relief.

25　Therefore, Plaintiff and the class seek damages well in excess of $5,000,000.00.

26　　　　　17.　　Plaintiff also seeks to recover attorneys' fees.  *Id.* at Prayer For Relief.  Courts in

27　the Ninth Circuit have held that removing defendants can reasonably assume that plaintiffs are

28　entitled to attorneys' fees valued at 25% of projected damages.  *See*, *e.g.*, *Fong v. Regis Corp.*,

1    2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *Molnar v. 1-800-Flowers.com, Inc.*,

2    2009 U.S. Dist. LEXIS 131768 at *15.  Plaintiff seeks a full refund of at least tens of millions of

3    dollars in clothing sales.  Accordingly, under the Ninth Circuit's benchmark, the attorneys' fees

4    alone could exceed the total jurisdictional amount necessary for removal under CAFA.

5          18.      Plaintiff also seeks injunctive relief not only enjoining Defendants from engaging

6    in future wrongful conduct but also requiring Defendants to engage in a "robust corrective

7    advertising campaign" that would require Defendants to pay for direct mailings and email blasts,

8    website and store posters, and media spots.  Complaint ¶¶ 105, Prayer For Relief.  The injunctive

9    relief sought by Plaintiff further increases the amount in controversy—an amount that clearly

10    exceeds the minimum necessary for removal jurisdiction under CAFA.  *See*, *e.g.*, *Rauschkolb v.

11    Chattem, Inc.*, 2016 U.S. Dist. LEXIS 12776, at *8 (S.D. Ill. Feb. 3, 2016) ("The plaintiff seeks

12    prospective relief that could include, among other things, a corrective advertising campaign, a

13    label change, and removing products from the shelf.  The cost of the possible prospective relief

14    would be significant.").

15          19.      Patagonia denies all liability and damages, and denies that a class may be certified

16    pursuant to Federal Rule of Civil Procedure 23.  However, based on Plaintiff's and the putative

17    classes' claims and the damages asserted against Defendants, Patagonia's total sales of the

18    Products during the relevant period, the significant amounts to be expended on attorneys' fees

19    litigating a nationwide consumer class action, and the costs associated with complying with

20    injunctive and declaratory relief, Patagonia alleges in good faith that the amount in controversy

21    supports this Court's jurisdiction under CAFA.

22                   **IV.**     <u>**VENUE**</u>

23          20.      Venue is proper in the Central District of California pursuant to 28 U.S.C. §§

24    1441(a) and 1446(a) because the county in which the State Court Action is pending is within this

25    District.

26

27

28

                      

**V.**     **NOTICE TO PLAINTIFF AND THE SUPERIOR COURT FOR THE COUNTY OF ORANGE**

21.     Pursuant to 28 U.S.C. § 1446(d), Patagonia will promptly serve this Notice of Removal on Plaintiff, through her counsel of record, Abbas Kazerounian of KAZEROUNI LAW GROUP, Apc, 245 Fischer Avenue, Unit D1, Costa Mesa, California 92626, and will promptly file a copy of the Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Orange.

22.     Pursuant to 28 U.S.C. § 1446(a), the undersigned counsel for Patagonia has read the foregoing and signs the Notice of Removal pursuant to Federal Rule of Civil Procedure 11.

**WHEREFORE**, Patagonia requests that the State Court Action pending before the Superior Court of the State of California for the County of Orange be removed to the United States District Court for the Central District of California.

Dated:  February 7, 2022          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By     _____
                    */s/ Alyssa Sones*
                  P. CRAIG CARDON
                  ALYSSA SONES
                  CHLOE CHUNG

                  *Attorneys for Defendants*
                  PATAGONIA, INC.

# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 12/22/2021 03:53:41 PM.
30-2021-01238022-CU-BT-CXC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PATAGONIA, INC.; AND LOST COAST OUTFITTERS, LLC,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MANAL ALEISA, Individually and On Behalf Of Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* | CASE NUMBER: <br> *(Nº* 30-2021-01238022-CU-BT-CXC |
|---|---|

Sup. Ct. of CA, County Of Orange

Civil Complex Center

751 W. Santa Ana Blvd., Santa Ana, CA 92701

Judge Peter Wilson

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Abbas Kazerounian, Kazerouni Law Group, APC, 245 Fischer Ave, Suite D1, Costa Mesa, CA 92626, (800) 400-6808

| DATE: 12/22/2021 <br> *(Fecha)* | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by *(Secr* __Ramirez__ | Georgina Ramirez | , Deputy <br> *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> *www.courtinfo.ca.gov* |
|---|---|---|

Electronically Filed by Superior Court of California, County of Orange, 12/22/2021 03:53:41 PM.
30-2021-01238022-CU-BT-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

Attorneys for Plaintiff,
Manal Aleisa

Assigned for All Purposes
Judge Peter Wilson

CX-102

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ORANGE – UNLIMITED CIVIL

| | |
|---|---|
| **MANAL ALEISA,**<br>**Individually and On Behalf of All**<br>**Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PATAGONIA, INC.; and LOST**<br>**COAST OUTFITTERS, LLC,**<br><br>**Defendants.** | **Case No.:** 30-2021-01238022-CU-BT-CXC<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND PUBLIC INJUNCTIVE RELIEF FOR VIOLATION OF:**<br><br>1) **CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750,** *et seq.*;<br>2) **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. §§ 17200, *ET SEQ.*;**<br>3) **CALIFORNIA'S FALSE ADVERTISING BUS. & PROF. CODE §§ 17500,** *et seq.*;<br>4) **NEGLIGENT MISREPRESENTATION;**<br>5) **INTENTIONAL MISREPRESENTATION; and**<br>6) **UNJUST ENRICHMENT.**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.      Plaintiff MANAL ALEISA ("Ms. Aleisa," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful practices and conduct of Defendants PATAGONIA, INC. ("Patagonia"), and LOST COAST OUTFITTERS, LLC ("Lost Coast Outfitters") (together the "Defendants") in violation of: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (3) California's False Advertising Bus. & Prof. Code §§ 17500, *et seq.*; and for (4) Negligent Misrepresentation; (5) Intentional Misrepresentation and Fraud; and (6) Unjust Enrichment.

2.      This action arises out of material misrepresentations and omissions made with regards to Defendants' advertisement and sale of Patagonia's Women's Tropic Comfort Hoody, and substantially similar products such as Patagonia Capilene® Cool Daily and Tropic Comfort that are manufactured by Patagonia (the "Product"), by falsely representing the Product contained 50+ UPF sun protection when in fact it contains far less sun protection.

3.      At all times relevant herein, Defendants have operated, and continue to operate, clothing stores across the nation, including in California or online.

4.      Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and on information and belief as to all other matters, including, and based upon, *inter alia*, the investigation conducted by and through her attorneys which includes, without limitation, a review of Defendants' public documents, announcements, and wire and/or press releases published by and regarding Defendants, and information readily obtainable on the internet.

//

//

**JURISDICTION AND VENUE**

5.     Subject matter jurisdiction is proper in this Court for the statutory causes of action, and because a substantial part of the events giving rise to the claims occurred in the County of Orange, State California, and each Defendants conducts substantial business within the County of Orange.

6.     This Court has personal jurisdiction over Patagonia and Lost Coast Outfitters because they each conduct business in the County of Orange, State California; and Plaintiff was injured in the County of Orange, State California where Plaintiff resides.

7.     Venue is proper.

**PARTIES**

8.     At all times relevant, Plaintiff was and is an individual residing in the State of California, County of Orange.

9.     Defendant Patagonia is part of a multinational clothing company that owns, manages, and operates a portfolio of stores across the world including clothing stores and facilities throughout the United States. Patagonia conducts business in the County of Orange, State of California; and, upon information and belief Defendant Patagonia, Inc., is headquartered at 259 W. Santa Clara St., Ventura, California, 93001.

10.     Defendant Lost Coast Outfitters is a clothing company that owns, manages, and operates a store in San Francisco, California.

11.     Lost Coast Outfitters conducts business in the County of Orange, State of California; and, upon information and belief Lost Coast, Inc., is headquartered 540 Jackson St, San Francisco, California 94133.

12.     Plaintiff alleges that at all times relevant herein, Defendants conducted business in the State of California, in the County of Orange, including but not limited to trade or commerce through advertising and offering various goods and services to consumers in California and throughout the United States.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

**FACTUAL ALLEGATIONS**

13.     On or about September 11, 2021, Plaintiff searched online from her home in Irvine, California looking to purchase luxury outdoor apparel containing sun-protectant fabric for her personal use.

14.     While viewing the various clothing items advertised for sale online, Plaintiff visited Lost Coast Outfitters' website (lostcoastoutfitters.com) and came across the Product, a Patagonia Women's Topic Comfort Hoody with UV sun protection.

15.     That same day, Plaintiff purchased the Product online through Lost Coast Outfitters' website for approximately $85.8, including sales tax.

16.     At the time of Plaintiff's purchase and review of the Product, it was expressly represented and advertised to Plaintiff that the Product was a "fast-drying fishing and travel hoody . . . that offers 50+ UPF sun protection."[1]

17.     This feature was a material term of the purchase, as Plaintiff decided to purchase the item to be worn outdoors and both personally and reasonably believed the Product had the advertised level of sun protection.

18.     A true and correct copy of Lost Coast Outfitters' website containing the Product's description, in which Plaintiff review and relied upon at the time of her purchase on or about September 11, 2021, is below:

---

[1] *See* Lost Coast Outfitters, *Patagonia Women's Tropic Comfort Hoody*, https://www.lostcoastoutfitters.com/products/patagonia-womens-tropic-comfort-hoody?variant=32301193101372 (last visited Oct. 22, 2021).

CLASS ACTION COMPLAINT



19.     Upon information and belief, the above description of the Product was on Life Coasts' website until at least the end of October of 2021.[2]

20.     Prior to Plaintiff purchasing the Product, Patagonia issued a voluntary recall on any Product purchased before September 1, 2021 from two of Patagonia's

---

[2] In or about November of 2021, Lost Coast Outfitters removed the portion of the online description of the Product indicating that it has "50+ UPF sun protection." However, upon information and belief, Plaintiff alleges that many consumers, including Plaintiff, relied on the representations that were present at the time of sale that indicated that the Product did in fact have 50+ UPF sun protection, when it in fact does not.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

sun protection lines, Capilene® Cool Daily and Tropic Comfort, because they did not meet the 50+ UPF rating that was advertised.[3]

21.     Plaintiff was not aware of that recall at the time of purchase.

22.     Based on Patagonia's representations regarding its voluntary recall, many consumers (including Plaintiff) are not part of the group of consumers eligible for a refund as the refund only applies to purchases made before September 1, 2021.[4]

23.     Patagonia has admitted that despite advertising and representing the Product as having 50+ UPF sun protection, Patagonia's "tests confirm a range of 17–45 UPF instead of 50+."[5]

24.     After purchasing the Product, Plaintiff was surprised to discover that the Product did not in fact offer the 50+ UPF sun protection as advertised. Instead, Plaintiff learned that the Product offered sun protection of only 17–45 UPF, averaging at about 34 UPF.[6]

25.     This protection is substantially far less than the advertised range, which was a material term that affected Plaintiff's decision to purchase the Product.

26.      In addition, upon information and believe, the Product has been found to

---

[3] Outside Business Journal, *RECALL: Patagonia sun protection products*, (July 1, 2021), https://www.outsidebusinessjournal.com/brands/camping-and-hiking/recall-patagonia-sun-protection-products/; *see also* https://7news.com.au/lifestyle/recalls/patagonia-shirts-hoodies-and-face-masks-urgently-recalled-over-uv-radiation-exposure-concerns-c-3341635 (last visited Oct. 22, 2021).

[4] Patagonia, *Voluntary Recall, Capilene® Cool Daily and Tropic Comfort UPF Products*, https://www.patagonia.com/voluntary-recall-of-capilene-cool-daily-and-tropic-comfort-upf-products/ (last visited Dec. 13, 2021) ("Check your style number if you bought one of these products <u>before September 1, 2021</u>.") (emphasis added).

[5] *Id.*

[6] *See supra,* footnote 6.

CLASS ACTION COMPLAINT

1  potentially "lead to sunburn and may pose a risk of serious and sometimes irreversible
2  damage of skin."[7]

3      27.    This is not what Plaintiff had bargained nor anticipated when she
4  purchased the Product.

5      28.    Had Plaintiff known the actual protection levels of the Product, she would
6  not have purchased the Product and/or purchased a different product.

7      29.    Based on the advertisements accompanying the Product, Plaintiff and
8  those similarly situated had no way of knowing that the Product did not in fact provide
9  a 50+ UPF protection level.

10     30.    Plaintiff saw and reasonably relied upon Defendants' representations
11 regarding the Product, and Plaintiff reasonably expected that Defendants would offer
12 her the advertised protection levels against ultraviolet rays when purchasing the
13 Product.

14     31.    As a result of unfair and deceptive practices of Defendants, Plaintiff and
15 other consumers similarly situated paid Defendants under the false impression that
16 Defendants would provide Products containing the advertised 50+ UPF sun protection
17 sun protection.

18     32.    Although Patagonia appears to have issued a voluntary recall of the
19 Product (which upon information and belief has merely been posted to its website to
20 date), such notice has not been reasonably provided to affected consumers.

21     33.    At the time Plaintiff purchased the Product other retailers, including Lost
22 Coast Outfitters, were still advertising the Product as having 50+ UPF sun protection.[8]

23     34.    Thus, consumers are continuing to be misled regarding the nature of the
24 Product, including Plaintiff who did not receive notice (nor was she otherwise made

---

25 [7] *Id.*

27 [8]  *See*  Patagonia    Capilene    Cool    Daily    Sun    Mask
28 https://www.rei.com/product/183213/patagonia-capilene-cool-daily-sun-mask ("built-
in UPF 50+ sun protection.") (last visited Oct. 22, 2021).

KAZEROUNI
LAW GROUP, APC

aware) of the Product's recall at the time of purchase.

35. Plaintiff is one of many consumers who were deceived by Defendants into purchase a Product that did not come with the advertised level of UV protection.

36. Defendants exploited Plaintiff and similarly situated customers for financial gain as the expense of consumers.

37. Plaintiff would like to purchase products from Defendants in the future but cannot be certain the she will not be misled again concerning the functions and capabilities of future products due to misrepresentations in the past, and until Defendants make appropriate corrections to their advertisements and properly inform affected consumers of the true nature of the products.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "National Class" and "California Sub-Class") pursuant to California Code of Civil Procedure Section 382.

39. Plaintiff represents, and is a member of, the Nationwide Class, which is defined as follows:

> All persons in the United States who purchased a Patagonia Capilene® Cool Daily and Tropic Comfort Product that did not have the advertised 50+ UPF sun protection, and who did not receive a refund of monies paid within the four years prior to filing the Complaint.

40. Plaintiff represents, and is a member of, the California Sub-Class, which is defined as follows:

> All persons in California purchased a Patagonia Capilene® Cool Daily and Tropic Comfort Product that did not have that did not have the advertised 50+ UPF sun protection, and who did not receive a full refund of monies paid within the four years prior to filing the Complaint.

41. The National Class and California Sub-Class are jointly referred to as the

- 8 -

KAZEROUNI
LAW GROUP, APC

"Classes."

42.    Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) persons who have received a full refund for the Products from either Defendant; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.

43.    Plaintiff reserves the right to redefine the Classes, including but not limited to expanding the class definition and adding one or more subclasses as appropriate based on discovery and specific theories of liability.

44.    The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Classes and to determine the identities of individual members of the Classes.

**Numerosity**

45.    The members of the Classes are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, on information and belief, the class is likely to consist of several thousands. Members of the Classes members can easily be identified through Defendants' records. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

46.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes. Those common questions of law and fact include, without limitation, the following:

a) Whether the Products were advertised as having 50+ UPF sun protection;

b) Whether Defendant's continue to advertise the Products as having 50+ sun protection;

- 9 -

c) Whether the Products did not in fact contain 50+ UPF sun protection;

d) Whether Defendants' conduct constituted an unfair business practice;

e) Whether Defendants' conduct constituted an unlawful business practice;

f) Whether Defendants misrepresented their products to include characteristics, uses, or benefits which they do not have;

g) Whether Defendants mispresented that their products were the subject of a transaction, which had been supplied in accordance with previous representations when they had not;

h) Whether Defendants' conduct, practices, and misrepresentations related to the marketing, advertising, and sales of the Product was unfair, deceptive, confusing, misleading, and/or unlawful in any respect, thereby violating the UCL and other applicable state law;

i) Whether Defendants have reasonably advised consumers of its recall relating to one or more of the Products;

j) Whether Plaintiff and the members of the Classes are entitled to rescission, restitution, injunctive, declaratory, or other relief; and,

k) Whether members of the Classes are entitled to any such further relief as the Court deems appropriate.

**Typicality**

47. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Classes with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' as demonstrated herein.

48. Plaintiff represents and is a Class member of the Class because Plaintiff paid Defendants money for Patagonia's Women's Tropic Comfort Hoody, which purported to provide 50+ UPF protection which later turned out to be false, and later recalled by Patagonia. Consequently, the claims of Plaintiff are typical of the claims

KAZEROUNI
LAW GROUP, APC

of Class Members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members whom Plaintiff seeks to represent.

49. Plaintiff and all members of the Classes have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

**Adequacy**

50. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein.

51. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member.

52. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the causes of action asserted. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

53. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class Members.

**Predominance**

54. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members of the classes. The elements of the legal claims brought by Plaintiff and members of the Classes are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of

all Class Members is impracticable and questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

56. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class Members who will be unable to enforce individual claims of this size on their own, and by Defendants' competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

57. The prosecution of separate actions by individual Class Members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class Members to protect their interests.

58. The prosecution of individual actions by members of the Classes would establish inconsistent standards of conduct for Defendants.

59. Defendants have acted or refused to act in ways generally applicable to the Classes, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

60. The Classes may also be certified because:

- 12 -

CLASS ACTION COMPLAINT

(a) the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

61.    This suit expressly is not intended to request any recovery for personal injury and claims related thereto.

## FIRST CAUSE OF ACTION
### VIOLATION OF CAL. CIV. CODE §§ 1750, *ET SEQ.*
#### [CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")]
#### [CALIFORNIA SUB-CLASS ONLY]

62.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendants.

64.    The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

65.    The CLRA prohibits unfair or deceptive practices in connection with the

- 13 -

KAZEROUNI
LAW GROUP, APC

sale of goods or services to a consumer.

66.     The CLRA is meant to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

67.     Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

68.     Plaintiff and each member of the California Sub-Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

69.     The Product constitutes a "good" within the meaning of Cal. Civ. Code § 1761(a).

70.     Each of the purchases made by Plaintiff and the Class Members from the Defendants were "Transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

71.     As described herein, Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et seq.*, to the detriment of Plaintiff and the California Sub-Class.

72.     Defendants, acting with knowledge, intentionally, and unlawfully brought harm upon Plaintiff and the California Sub-Class by knowingly and/or purposefully failing to properly disclose that the Product failed to meet the advertised 50+ UPF.

73.     Defendants, acting with knowledge, intentionally, and unlawfully brought harm upon Plaintiff and the Classes by knowingly and/or purposefully failing to provide proper notice to all affected consumers and to provide refunds to all consumers who purchased the Product.

74.     Specifically, by not providing Plaintiff and members of the California Sub-Class with a Product containing the advertised 50+ UPF and/or failing to properly disclose the true nature of the Product's sun protection abilities, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

    a) In violation of § 1770(a)(5), by representing that Defendants' Product

KAZEROUNI
LAW GROUP, APC

- 14 -

has characteristics, uses, or benefits that it does not have;

b) In violation of § 1770(a)(7), by Defendants misrepresenting the standard, quality or grade of the goods or service purchased;

c) In violation of § 1770(a)(9), Defendants advertising good or services with the intent not to sell them as advertised; and,

d) In violation of § 1770(a)(14), by representing that payment to Defendants for Product involves, remedies, or obligations that it does not have or involve, or that are prohibited by law.

75. The facts concealed or not disclosed by Defendants to Plaintiff and the California Sub-Class, including that the Product did not provide 50+ UPF sun protection.

76. Plaintiff and the California Sub-Class reasonably expected that the Product would live up to the advertised sun protection levels and/or that Defendants would provide proper notice to all affected consumers of a voluntary recall concerning the Product's sun protection abilities.

77. Through the conduct or omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the California Sub-Class to pay Defendants for the Product. However, Plaintiff and the California Sub-Class would not have paid nor purchased the Product if they been warned that the Product did not in fact have 50+ UPF protection.

78. As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, et seq., Plaintiff and each member of the California Sub-Class have suffered harm in the form of paying monies to Defendants for the Product, shipping costs, and related offerings and Defendants' retaining of said money when they otherwise would not have paid for the Product if they knew its true sun protecting abilities.

79. Pursuant to California Civil Code § 1782(a), on or about October 22, 2021, Plaintiff sent to both Defendants, individually and on behalf of similarly situated

- 15 -

KAZEROUNI
LAW GROUP, APC

individuals across the nation and in California, a letter via Certified Mail, advising of the violations of the CLRA alleged herein, and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom, and that Defendants provide reasonable and adequate notice to affected customers in the form of a robust corrective advertising campaign.

80.  In response to the demand, Patagonia asserted that Plaintiff should take up the issue with Lost Coast Outfitters.

81.  Also, Patagonia failed, within 30 days of receipt of Plaintiff's demands, to engage in a reasonable and adequate notice campaign to ensure that affected consumers are on notice of the true nature of the Product's sun protection capabilities. For instance, upon information and belief, Patagonia did not to provide for any print or online notices beyond a notice on its homepage, posts on its own social media, and displays in its stores, nor did Patagonia offer to provide notice via print publication.

82.  Additionally, Patagonia also failed, within 30 days of receipt of Plaintiff's demands, to provide a full refund to consumers (like Plaintiff) who purchased the Product after September 1, 2021 despite the Product still being advertised as providing 50+ UPF sun protection.

83.  Lost Coast Outfitters failed, within 30 days of receipt of Plaintiff's demands, to provide Plaintiff with an adequate correction, repair, replacement, or other remedy, and has offered no relief or cure for the members of the National or California Sub-Class who are either unaware of the recall or have not received a full refund.  Indeed, upon information and belief, Lost Coast Outfitters has not posted on its website any information about the Product recall.

84.  Additionally, Lost Coast Outfitters has not engaged in, or unequivocally offered to engage in, a reasonable and adequate notice campaign to ensure that affected consumers are on notice of the true nature of the Product's sun protection capabilities. For instance, Lost Coast Outfitters did not to provide for a posting on its website and in-store regarding the recall, nor did Lost Coast Outfitters offer to provide such notice

KAZEROUNI
LAW GROUP, APC

or unequivocally offer to provide such notice. Lost Coast Outfitters also did not offer to provide notice via print publication and/or online media publication.

85.    Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

86.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the California Sub-Class, seeks a public injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA.

87.    Specifically, Plaintiff, individually and on behalf of the California Sub-Class, seeks an injunction, including but not limited to a public injunction, requiring Defendants to: (1) cease and desist from selling the Product that was misrepresented as providing 50+ UPF sun protection on all printed publications, online advertisements, and online descriptions of the Product (including but not limited to on lostcoastoutfitters.com); (2) provide direct notice of the Product's recall to consumers who purchased the Product directly from each Defendant via mail and email notices or for whom Defendants have contact information; (3) issue a full refund to consumers who purchased the Product within four years prior to the filing of the Complaint (including after September 1, 2021); and (4) initiate a robust corrective advertising campaign in California to inform consumers about the true nature of the Product, including but not limited to posting the recall notice on the product specific pages on Defendants' websites and in physical retail stores of Defendants, and adequate printed notices and/or online media notices regarding the voluntary recall of the Products.

88.    Plaintiff and California Sub-Class Members were harmed as a direct and proximate result of Defendants' violations of the CLRA and are thus entitled to a declaration that Defendants violated the CLRA.

89.    Pursuant to § 1782 (e), Plaintiff and the Class assert claims for actual damages, punitive damages, and attorneys' fees and costs.

//

**SECOND CAUSE OF ACTION**

**VIOLATION OF BUS. & PROF. CODE §§ 17200, *ET SEQ.***

**[CALIFORNIA UNFAIR COMPETITION LAW ("UCL")]**

**[CALIFORNIA SUB-CLASS ONLY]**

90.     Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

91.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendants.

92.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

93.     Defendants' advertising that customers would receive a "fast-drying fishing and travel hoody . . . that offers 50+ UPF protection," is false and misleading to a reasonable consumer, including Plaintiff, because the Product does not in fact provide consumers with this level of protection against ultraviolet rays, yet Defendants have not refunded all customers the monies they paid nor have all affected consumers been properly notified about the true nature of this Product.

94.     Upon information and belief, Defendants continue to charge their customers for the Product, while deceiving consumer about the true nature of the its purported ultraviolet ray protection.

95.     **Unlawful:** The acts alleged herein are "unlawful" under the UCL in that they violate, as described herein, at least the following laws: (1) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (2) the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

96.     **Fraudulent:** A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test. As set forth herein, Defendants' representations regarding the marking of the Product as containing 50+

- 18 -

KAZEROUNI
LAW GROUP, APC

UPF sun protection are likely to deceive reasonable consumers and the public. Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the California Sub-Class to believe that they would receive 50+ UPF sun protection with the purchase of the Product.

97. **Unfair:** Defendants' conduct with respect to the advertising and sale of the Product is unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

98. Defendants' business practices, described herein, violate the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

99. Defendants' advertising and promise to provide protection against harmful ultraviolet rays, when in fact the Product provides significantly less sun protection, is of no benefit to consumers.

100. Defendants' conduct with respect to the advertising and sale of the Product was also unfair because it violated California public policy as declared by specific statutory or regulatory provisions, including but not limited to the FAL and CLRA.

101. Defendants' conduct with respect to the advertising and sale of the Product is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

102. Plaintiff and the members of the California Sub-Class acted reasonably when they purchased the Product based on the belief that they would be provided with certain levels of protection against ultraviolet rays.

103. Defendants profited from the sale of its falsely, deceptively, and unlawfully advertised the Product as having "50+ UPF sun protection" to unwary

- 19 -

consumers.

104.   Plaintiff and the California Sub-Class lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased or paid for Defendants' Product absent Defendants' misrepresentations and omissions of a warning that they would not in fact receive the certain levels of protection against ultraviolet rays as promised by Defendants.

105.   Plaintiff and California Sub-Class Members are likely to be damaged by Defendants' deceptive trade practices, as Defendants continues to disseminate, and are otherwise free to continue to disseminate, misleading information. Thus, injunctive relief enjoining this deceptive practice is proper, and Defendants should be required to issue refunds to all members of the Classes within the four years prior to filing of the Complaint. Moreover, Defendants continue to mislead consumer by failing to adequately provide notice to affected consumers regarding the true nature of the Product.

106.   Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other California Sub-Class Members who have suffered concrete tangible injury in fact as a result of Defendants' fraudulent, unlawful, and unfair conduct.

107.   In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, Class Members, and the general public, seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

108.   Plaintiff, on behalf of themselves and members of the California Sub-Class, also seeks an order for the restitution of all monies from the sale of the falsely advertised Product that Defendants unjustly acquired through acts of unlawful competition.

109.   Plaintiff and the California Sub-Class have suffered damages in an amount to be determined at trial.  Plaintiff and the California Sub-Class request the

KAZEROUNI
LAW GROUP, APC

Court enter an order awarding them mandatory restitution.

110.   Plaintiff and the California Sub-Class therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### VIOLATION OF BUS. & PROF. CODE §§ 17500, *ET SEQ.*

### [CALIFORNIA FALSE ADVERTISING LAW ("UCL")]

### [CALIFORNIA SUB-CLASS ONLY]

111.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

112.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendant.

113.   Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

114.   Defendants sold customers the Product that was advertised as containing "50+ UPF protection" when in fact this is not true. In fact, Patagonia later admitted to such inaccurate advertising in its voluntary recall conceding that the Product only

KAZEROUNI
LAW GROUP, APC

averaged about 34 UPF.[9] Defendants' advertising and marketing of the Product as having "50+ UPF protection" misrepresented and/or omitted the true content and nature of the Product. Defendants knew or should have known that these statements were unauthorized, inaccurate, and misleading.

115. Defendants' advertising that the Product contained "50+ UPF protection" made purchasers of that Product believe they would be able to protect themselves from harmful ultraviolet rays; however, this statement is false and misleading to a reasonable consumer, including Plaintiff, because the Product does in fact not have the 50+ UPF protection that it purported to provide.

116. Defendants violated § 17500, *et seq.* by misleading Plaintiff and the California Sub-Class to believe that they would have access 50+ UPF protection when purchasing the Product.

117. Defendants knew, or should have known through the exercise of reasonable care, that advertising the Product as having "50+ UPF protection" is false and misleading because the Product was not able to provide 50+ UPF protection, rather it was only able to provide 17-45 UPF.

118. Further, Defendants knew or should have known that they were defrauding and/or misleading customers when the Product continued to be sold with the description that the Product offered "50+ UPF protection" even after Patagonia issued a voluntary recall due to this false and misleading description of the Product.

119. Plaintiff and the California Sub-Class lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased or paid for the Product absent Defendant's misrepresentations and omissions regarding the

---

[9] Outside Business Journal, *RECALL: Patagonia sun protection products*, (July 1, 2021), https://www.outsidebusinessjournal.com/brands/camping-and-hiking/recall-patagonia-sun-protection-products/; *see also* https://7news.com.au/lifestyle/recalls/patagonia-shirts-hoodies-and-face-masks-urgently-recalled-over-uv-radiation-exposure-concerns-c-3341635 (last visited Oct. 22, 2021).

KAZEROUNI
LAW GROUP, APC

Products 50+ UPF sun protection; (b) they would not have purchased or paid for Defendants' Product on the same terms absent Defendant's misrepresentations and omissions; and (c) Defendants' representations regarding the Product decreased the value of the Product to Plaintiff and California Sub-Class.

120. Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

121. Plaintiff and the Class suffered tangible, concrete injuries in fact as a result of Defendants' actions as set forth herein because they purchased the Product in reliance on Defendants' false and misleading marketing claims that they would receive 50+ UPF protection when purchasing the Product.

122. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants advertised the Product in a manner that is untrue and misleading, which Defendants knew or reasonably should have known.

123. Defendants profited from the sales of the falsely and deceptively advertised Product, and its purported UPF protection to unwary and believing consumers.

124. As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and California Sub-Class Members are entitled to injunctive and equitable relief and restitution.

125. Plaintiff and the California Sub-Class have suffered damages in an amount to be determined at trial.

126. Plaintiff and the California Sub-Class request the Court enter an order awarding them mandatory restitution.

127. Plaintiff and the California Sub-Class therefore also seek pre-and-post-

CLASS ACTION COMPLAINT

judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### [NATIONAL CLASS AND CALIFORNIA SUB-CLASS]

128.   Plaintiff realleges and incorporates the allegations elsewhere in the Consolidated Complaint as if set forth in full herein.

129.   Plaintiff brings this claim individually and on behalf of the members of the proposed National Class and California Sub-Class against Defendants.

130.   As set forth herein, Defendants misrepresented that purchasers of the Product would receive certain protection against ultraviolet rays. However, Patagonia recalled the Product for failing to provide such protection, conceding that it did not in fact provide 50+ UPF protection. Instead, the Product offered only 17-45 UPF of sun protection. As such, Defendants misrepresented the nature of the Product to Plaintiff and the Class Members.

131.   At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false. Defendants at least negligently misrepresented and or negligently omitted material facts about the purchase of the Product.

132.   In providing the Product to Plaintiff and the members of the Classes, Defendants owed a duty to exercise reasonable care to make full, fair, and adequate disclosure in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of the Product. This duty included, among other things, taking reasonable measures to protect the rights of Classes in compliance with applicable

- 24 -

KAZEROUNI
LAW GROUP, APC

law, including, but not limited to, procedures and policies to supervise, restrict, limit, and determine the accuracy and truthfulness of their representations, materials, and advertising in connection with their services.

133. In providing the Product to Plaintiff and the Classes, Defendants owed a duty to exercise reasonable care regarding and when making their representations in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of their services. It was foreseeable that if Defendants did not take reasonable measures to ascertain and ensure the accuracy and truthfulness of their representations, Plaintiff and the members of the Classes would rely on its representations and purchase the Product they thought would provide certain levels of protection against ultraviolet rays. Defendants should have known to take precautions to ensure its advertising, materials, and representations were accurate.

134. The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and members of the Classes reasonably, justifiably, and detrimentally relied, were intended to induce and influence, and actually induced and influenced, Plaintiff and Class Members to purchase the Product. Plaintiff and the Classes would not have purchased the Product if the true facts had been known. The negligent actions and misrepresentations of Defendants caused actual and tangible concrete injury and harm to Plaintiff and the members of the Classes who are entitled to damages and other legal and equitable relief as a result.

135. Defendants' negligence was a substantial factor in causing harm to Plaintiff and Class Members. As a direct and proximate cause and result of Defendants' failure to exercise reasonable care and use reasonable measures to ensure the accuracy of its representations and advertising, Plaintiff and the Classes have suffered actual injury-in-fact and economic damages, including incurring Product related costs that they would not have otherwise incurred and paid.

136. Neither Plaintiff nor other members of the Classes contributed to the unlawful conduct set forth herein, nor did they contribute to Defendants' making of its

KAZEROUNI
LAW GROUP, APC

misrepresentation, nor to the insufficient policies, procedures, and measures which were omitted and led to the failure to ensure the accuracy and truthfulness of Defendants' claims in connection with the nature of their services.

137.   Plaintiff and the members of the Classes request the Court enter an order awarding Plaintiff and the members of the Classes mandatory restitution, rescission, and/or damages, and that they are entitled to recover their reasonable attorneys' fees. Plaintiff and the members of the Classes therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION
#### [NATIONAL CLASS AND CALIFORNIA SUB-CLASS]

120.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

121.   Plaintiff brings this claim individually and on behalf of the members of the proposed National Class and California Sub-Class against Defendants.

122.   As set forth herein, Defendants misrepresented that purchasers of the Product would receive 50+ UPF protection.  However, Defendants knew that the Product did not in fact provide 50+ UPF protection following Patagonia's voluntary. Yet, Defendants continued to advertise and sell the Product, and failed to properly inform affected consumers of the true nature of this Product. As such, Defendant misrepresented the nature of the purchases by Plaintiff and the members of the Classes.

123.   These misrepresentations were made with knowledge of their falsehood with the intent that the general public, including Plaintiff and the members of the Classes, would rely upon them, or in reckless disregard of the truth thereof.  Defendants

knew, or should have known, that Plaintiff, Class Members, and consumers would rely on the product description of the Product and expect such reasonable ultraviolet protection when purchasing the Product.

124. Defendants knowingly failed to provide purchasers of the Product with their promised ultraviolet protection.

125. Plaintiff and the members of the Classes were harmed because Defendants made a false promise to them. Defendants did not intend to perform their promises under the product description of the Product.

126. Defendants were aware that Plaintiff and members of the Classes would rely on the Product's advertisement and description when deciding to purchase the Product.

127. Plaintiff and the members of the Classes reasonably relied on the description and advertisement of the Product when they made their purchases, and as such, reasonably relied on the promises made therein. Defendants did not perform their obligations under the product description of the Product namely by failing to provide purchasers with 50+ UPF protection.

128. Plaintiff and the members of the Classes were harmed. Plaintiff's and the members of the Classes' reliance on Defendants' representations was a substantial factor in causing them harm.

129. The misrepresentations made by Defendants upon which Plaintiff and members of the Classes reasonably and justifiably relied were widely disseminated, were an integral part of the contract, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase the Product.

130. Plaintiff and members of the Classes would not have purchased the Product on the same terms, if the true facts had been known. The fraudulent actions of Defendants caused damage to Plaintiff and the members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

131. Plaintiff and members of the Classes request the Court enter an order

1  awarding Plaintiff and the members of the Classes mandatory restitution, rescission,

2  and/or actual damages, punitive and exemplary damages, and that they are entitled to

3  recover their reasonable attorneys' fees.

4      132.  Plaintiff and the members of the Classes therefore also seek pre-and-post-

5  judgment interest and attorneys' fees and costs as allowed by statute, including without

6  limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law

7  "private attorney general" equitable doctrine, any "common fund" doctrine, any

8  "substantial benefit" doctrine, and/or any equitable principles of contribution and/or

9  other methods of awarding attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**[NATIONAL CLASS AND CALIFORNIA SUB-CLASS]**

13      133.  Plaintiff incorporates by reference all of the above paragraphs of this

14  Complaint as though fully stated herein.

15      134.  Plaintiff brings this claim individually and on behalf of the members of

16  the Classes against Defendants.

17      135.  "Under California law, the elements of unjust enrichment are: (a) receipt

18  of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia*

19  *v. Volkswagen Grp. Of Am. Inc.,* No. 15-CV-00887-HSG, 2015 WL 4747533 at *8

20  (N.D. Cal. Aug. 11, 2015).

21      136.  Plaintiff and members of the Classes conferred non-gratuitous benefits

22  upon Defendants by purchasing the Product, thereby significantly increasing

23  Defendants' revenue and profits, thereby unjustly enriching Defendants at the expense

24  of and to the detriment of Plaintiff and members of the Classes.

25      137.  Defendants' retention of any benefit collected from Plaintiff's and

26  members of the Classes' payments to Defendants, either directly or indirectly, violated

27  principles of justice, equity, and good conscience. Thus, Defendants have been unjustly

KAZEROUNI
LAW GROUP, APC

- 28 -

enriched and Plaintiff and members of the Classes are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained.

138.    As a result of Defendant's unlawful practices, Plaintiff and members of the Classes have suffered concrete harm and injury. Plaintiff and members of the Classes are therefore entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants in a manner established by this Court.

139.    Plaintiffs and members of the Classes request the Court enter an order awarding Plaintiff and the members of the Classes, restitution, damages, and that they are entitled to recover their reasonable attorney's fees.

140.    Plaintiffs and members of the Classes therefore also seek pre-and-post-judgement interest and attorney's fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Classes, prays for the following relief against Defendants, and each of them:

- That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;

- Appointing Plaintiff as the representative of the Classes;

- Appointing the law firms representing Plaintiff as Class Counsel;

- That the Court find and declare that Defendants have violated the UCL and committed unfair, unlawful, and/or deceptive business practices;

- An order requiring Defendants to pay restitution to Plaintiff and the Class due to Defendant's UCL violations, pursuant to Cal. Bus. & Prof. Code §§ 17200-17205 in the amount of the money paid to Defendants not refunded;

- An order requiring imposition of a constructive trust and and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;
- An Order enjoining, including through public injunctive relief, the Defendants from continuing the wrongful conduct alleged herein;
- An Order requiring, including through public injunctive relief, the Defendants provide reasonable and adequate notice to members of the Classes of the wrongful conduct alleged herein, including by initiating a robust corrective advertising campaign to inform consumers about the true nature of the Product, to include direct mail / email notice where feasible; posting the recall notice on the product specific pages on Defendants' websites and in physical retail stores of Defendants; and printed notices and/or online media notices regarding the voluntary recall of the Product;
- An Order requiring Defendants to accept returns of the Product by all members of the Classes in exchange for full a refund of all monies paid, for Products purchased during the entire Class Period, including after September 1, 2021;
- Actual damages;
- Punitive damages;
- Costs of suit;
- Pre-Judgment and Post-Judgment interest;
- Actual damages, punitive damages, and attorneys' fees and costs pursuant to California Civil Code § 1782(e);

- An award of reasonable attorneys' fees for Plaintiff and the Class pursuant to Code of Civil Procedure § 1021.5, and California Civil Code § 1780, the private attorney general doctrine, and/or any other applicable law; and,
- Any and all other relief as this Court may deem necessary or appropriate.

**JURY DEMAND**

141. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: December 22, 2021                      Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:_____

ABBAS KAZEROUNIAN, ESQ.
ak@kazlg.com
ATTORNEY FOR PLAINTIFF

<u>**Additional Plaintiff's Counsel**</u>
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

# Exhibit A

## DECLARATION OF MANAL ALEISA

I, **MANAL ALEISA, DECLARE:**

1. On or about September 11, 2021, I purchased an Patagonia's Women's Tropic Comfort Hoody (the "Product").

2. At the time of my payment and review of the Product, I was in Orange County, California, where I also reside.

3. Also, it is my understanding that Defendants, Patagonia, Inc. and Lost Coast Outfitters, LLC do business in the County of Orange, State of California.


I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed on December 22 , 2021.



By: _____

MANAL ALEISA

Electronically Filed by Superior Court of California, County of Orange, 12/22/2021 03:53:41 PM.
30-2021-01238022-CU-BT-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk. **CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Abbas Kazerounian (SBN: 249203)<br>Kazerouni Law Group, APC<br>245 Fischer Ave., Suite D1<br>Costa Mesa, CA 92626<br>TELEPHONE NO.: 800-400-6808   FAX NO.: 800-520-5523<br>ATTORNEY FOR *(Name):* Plaintiff, Manal Aleisa | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 751 W. Santa Ana Blvd.
MAILING ADDRESS: 751 W. Santa Ana Blvd.
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

**CASE NAME:**
Alesia v. Patagonia, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ **Unlimited**   ☐ **Limited**<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ **Counter**   ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2021-01238022-CU-BT-CXC<br>JUDGE: Judge Peter Wilson<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*   CX-102

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*   6; Unfair Business Practices
5. This case ☑ is ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 22, 2021

Abbas Kazerounian
_____
(TYPE OR PRINT NAME)   ▶   _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

> ✓ **Plaintiff must serve a copy of these Guidelines with the Summons and Complaint.**



# GUIDELINES

## ALL COMPLEX CIVIL DEPARTMENTS

Welcome to the Complex Civil Litigation Program. Orange County Superior Court is one of six courts designated by the California Judicial Council as pilot project courts to handle solely complex civil litigation. These pilot courts were established to apply case management principles to improve the effective administration of justice by reducing the time and expense normally associated with the litigation of complex civil cases. It has been our experience that these principles make it easier to prepare these cases for trial by providing a more orderly framework for the pre-trial phase of the litigation.

The result is a greater opportunity for early case resolution through mediation and settlement, and improving the way complex cases are tried by encouraging the use of technology.

Counsel's familiarity with the applicable *California Rules of Court ["Local Rules"]*, *Local Rules – Superior Court of California, County of Orange*, and these *Guidelines* is expected. The *Guidelines* should answer most procedural questions and assist you in feeling comfortable in our courtrooms.

### COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE

Counsel are expected to adhere to the provisions of the *California Attorney Guidelines of Civility and Professionalism*. (State Bar of the State of California, adopted July 20, 2007, attached to these *Guidelines* as Appendix 1.)

1

## I. GENERAL MATTERS

1. When issued by the court, the provisions of the Case Management Order in the particular action shall govern over these *Guidelines*. Procedural matters not provided for in these *Guidelines* or in a Case Management Order shall be governed by the pertinent provisions of the California statutes, the California Rules of Court, and the California Standards of Judicial Administration. The purpose of these *Guidelines* is to supplement but not contradict the law governing civil procedure.

2. The Superior Court of California, County of Orange has established a system for e-filing in accordance with Code of Civil Procedure §1010.6 and California Rules of Court, rule 2.250 *et seq.* All papers filed in complex civil cases must be electronically filed unless a party has been specifically excused by the Court from the requirement, pursuant to the *Local Rules – Superior Court of California, County of Orange* ("local rules"), rule 308. To register for the program and to obtain additional information, go to: www.occourts.org/complexcivil/ .

3. Cross-complainants must serve a copy of these guidelines and give notice of any scheduled hearings and depositions at the time the cross-complaint is served.

4. Information about filing requirements or fees is available on the court's Internet home page at: http://www.occourts.org, or by telephone at (657) 622-5314. The local rules are available on the court's public internet home page.

5. Telephone appearances are conducted through **CourtCall**, pursuant to the provisions of California Rules of Court, Rule 3.670. Parties are encouraged to seek further information concerning guidelines and protocols from **CourtCall** at (310) 342-0888 or (888) 88-COURT.

## II. Initial Case Management Conference:

The Initial Case Management Conference shall take place in conformance with the requirements set forth in California Rules of Court, rule 3.750. The Initial Case Management Conference is generally scheduled approximately 90 days after the action is filed. Plaintiff is required to give notice of this conference date to all other parties. Thereafter, Status Conferences shall be set in consultation with the Court, according to the needs of the parties.

## III. Case Management Conference and Status Conference Statements:

The judges of the Civil Complex Center have determined that Judicial Council form CM-110, *Civil Case Management Statement* required by California Rules of Court, Rule 3.725(c) for some civil cases, is inadequate to provide the judges the information they need when determining how a particular complex case should be managed. ***Form CM-110 should not be used in any action designated or provisionally designated as***

*complex.*  Instead, the parties shall file with the court either a Case Management Conference Statement or a Status Conference Statement as described below.

Counsel must file an updated Conference Statement for *each* Case Management or Status Conference.  The Conference Statement is due no later than 5 court days prior to the hearing.

A Status Conference Statement may be filed as an alternative to the Case Management Conference Statement when appropriate.  A Status Conference Statement is generally less detailed than a Case Management Conference Statement and is to be used to advise the court of progress or developments in the case which have occurred since the last review hearing.

A joint statement of the parties is preferred by the court whenever possible.

**IV.  CASE MANAGEMENT ORDERS:**

Case Management Orders are not required in all cases, but they may be helpful in cases where the sequencing and timing of key events is necessary in the management of the litigation and preparation of the case for trial.  However, even if a Case Management Order is not necessary in a particular case, *all complex cases must be managed by counsel, or the court, or both.*

The goal of case management is to bring about a just resolution as speedily and economically as possible.  To be effective, case management should be tailored to the needs of the particular litigation and to the resources available; make-work activity should be avoided.  The parties or the court should develop and monitor an effective plan for the orderly conduct of pretrial and trial proceedings.  A case management plan should prescribe a series of procedural steps, with firm dates, giving direction and order to the case as it progresses through pretrial proceedings to summary disposition or trial. The setting of interim time limits and deadlines is often a necessary part of an effective case management plan.

**V.  LAW AND MOTION:**

1. **Meet and Confer**: This court adopts the view that pre-filing conferences between counsel may be useful in avoiding useless or unnecessary motions. Therefore, prior to the hearing of any motion, petition or application, except applications to appear *pro hac vice* and motions to withdraw as counsel of record, all counsel and parties appearing in *propria persona* shall confer in a good faith attempt to eliminate the necessity of the hearing or resolve as many disputes as possible.

   Counsel for the moving party shall arrange the conference to meet and confer and, at least 3 calendar days before the hearing, file with the court a statement entitled "Meet and Confer," summarizing the issues remaining in dispute and the respective positions taken.

3

2. **Tentative Rulings**: Members of the Complex Civil Panel may publish tentative law and motion rulings by any system described in Local Rule 382.

3. **Off Calendars and Continuances:** In order to promote judicial economy and avoid wasting court resources, counsel for moving parties must notify the courtroom clerk as soon as possible if any matter will be taken off calendar. Stipulations between the parties to continue a matter must be approved by the court.

## VI. EX PARTE APPLICATIONS:

1. The court's consideration of an *ex parte* application will not interfere with or delay any trial in progress. The moving party is expected to adhere to the provisions of California Rules of Court, Rule 3.1200 – 3.1207. All papers necessary to the determination of the application, including any proposed pleading, motion or order, must be submitted with the *ex parte* application. Counsel should contact the courtroom clerk to verify any specific deadlines for the submission of moving papers or other preferences applicable to that department. Counsel may also contact the courtroom clerk to inquire if oral argument will be permitted, or if the court will rule based on the application and any written opposition.

2. The application shall include a declaration of Notice of Ex Parte Hearing and a proposed order; and shall state in the notice the irreparable harm, immediate danger or other basis for *ex parte* relief that will result if the requested relief is not granted until a regularly noticed motion may be heard.

## VII. MANDATORY SETTLEMENT CONFERENCES ("MSC's"):

Compliance with Local Rule 316 is required.

All of the judges at the Civil Complex Center are willing to help another judge in the settlement of a complex case depending upon the judge's available calendar. If the parties agree to have a mandatory settlement conference conducted by a judge other than the assigned judge, the parties should first determine the other judge's availability before asking the assigned judge to order the settlement conference. However, it is not presumed that the judge to whom a case is assigned should not conduct the mandatory settlement conferences in his or her cases. If a party objects to the trial judge's participation in the MSC, the party must advise the judge or the courtroom clerk of its objection prior to the setting of the MSC. Counsel are advised to check with the court to determine its preference in this regard.

## VIII. Pre-trial Conferences

1. A Pre-trial Conference may be scheduled 30-90 days before trial for the purpose of determining the readiness of the parties and      resolving procedural issues concerning the trial. The goal of the Pre-trial Conference is to make the trial proceed as predictably and smoothly as possible. **The Pre-trial**

**Conference is not a substitute for the Issues Conference required by Local Rule 317.**

2. At the Pre-trial Conference, counsel should be prepared to state whether his or her client will be using the electronic presentation of evidence at the trial. Using electronic equipment to present evidence at trial requires preparation, organization and cooperation by the parties. The court expects that the parties will work together in devising a protocol for the pre-marking of exhibits by using prefixes or a super-numeration system to designate the proponent of the evidence. Where there are multiple pages to a single exhibit, each page should be bates-stamped. Counsel should contact the courtroom clerk to determine if the trial judge has a specific preference for how exhibits should be marked.

3. In a case where it is reasonable to presume voluminous documents will be produced during discovery, counsel are urged to agree upon a protocol for the pre-marking of exhibits at the earliest time possible, preferably before the initiation of discovery and delivery to a document depository. It is less expensive to mark and index voluminous documents as they are deposited than when it is done on the eve of trial.

4. Counsel are required to cooperate throughout the trial so that one party's electronic exhibits are available to the other side to display during cross-examination.

5. The electronic version of documents, photographs, charts or other demonstrative evidence may be substituted for the actual exhibit at trial upon the stipulation of the parties and order of the court. This guideline is not meant to alter the rules of discovery or the obligation of a party to make available the original of a document for inspection by another party through discovery or at the Issues Conference.

6. Physical exhibits and documents are not required to be presented in a digitalized format. However, evidence which has not been presented in electronic form customarily will be ordered by the court returned at the end of the appeal period to the party which offered it. Before trial commences, counsel will be asked to sign a stipulation for the return and maintenance of the exhibits. Plaintiff will maintain joint exhibits unless the court orders otherwise.

IX. **Use of the Court's Evidence Presentation Systems**

1. **On-Site Electronic Evidence Presentation Systems:** Every courtroom has the capability of being equipped with court-based evidence presentation systems for use by the parties. Counsel are strongly encouraged to take advantage of the benefits of the electronic presentation of evidence when in trial at the Civil Complex Center to enhance the orderly and effective presentation of evidence, reduce concerns about the custody and security of exhibits, and reduce the work and expense associated with the tagging, storing and transporting of exhibits. In an appropriate case, the court may require the

use of an electronic evidence presentation system. Electronic evidence presentation systems must be compatible with the court's infrastructure (video distribution amplifier, wiring, conduit, floor receptacles and connectors).

2. **Electronic Evidence Standard Format:** Counsel presenting evidence that is exclusively electronic in form must present the evidence in PDF file format and stored on CD-R. Whenever evidence is presented electronically, the physical custody of exhibits by the clerk is replaced by the electronic record of the exhibits. Evidence must be in sequential order with the exception of JPEG and MPEG files which shall be stored on separate discs. Counsel may also prepare electronic evidence using alternate non-proprietary formats subject to the approval of the court. The compact discs (CDs) must be labeled as follows:

Case #
Case Name
Exhibits _____ to _____
(Original or Backup copy)

The courtroom clerk will maintain an updated exhibit list. When evidence is electronically presented at the trial, the court may require counsel to periodically submit to the clerk an up-to-date CD containing exhibits received into evidence.

It is counsels' responsibility to identify and track redactions, modifications, and substitution of exhibits. Counsel are expected to be prepared to submit an up-to-date evidence CD with all redactions, modifications, and substitutions, as well as impeachment documents used, upon the courtroom clerk's request.

Impeachment exhibits are not pre-marked. However, counsel are responsible for having the document electronically recorded upon being offered into evidence (exhibit numbers may be reserved for this purpose).

If the jury will be provided the evidence in electronic format for its deliberation, the parties are required to meet and confer and submit the final joint exhibit list containing only those exhibits received into evidence. The CD used by the jurors must include the joint exhibit list and the electronically stored exhibits which have been entered into evidence. Submission of the joint evidence CD also serves as a stipulation that all exhibits presented in electronic form to the jury are complete and correct. Any disagreement must be brought to the attention of the court at the earliest reasonable time. Counsel must lodge two (2) evidence CDs of all exhibits received into evidence.

## X. TRIALS – MOTIONS IN LIMINE

Counsel should attempt to resolve evidentiary disputes at the Local Rule 317 Issues Conference before resorting to filing a motion *in limine*. It is frequently more productive of court time, and the client's money for counsel to informally address at the Issues Conference the issues which could be raised in motions *in limine* and, instead of a motion, present a stipulation to the court on uncontested issues. Matters of day-to-day

trial logistics and common professional courtesy should not be the subject of motions *in limine*. These are matters of common professional courtesy that should be accorded counsel in all trials. See, <u>Kelly v. New West Federal Savings</u> (1996) 49 Cal.App.4[th] 659,671.

APPENDIX 1
**California Attorney Guidelines of Civility and Professionalism**
(Abbreviated, adopted July 20, 2007)

INTRODUCTION. As officers of the court with responsibilities to the administration of justice, attorneys have an obligation to be professional with clients, other parties and counsel, the courts and the public. This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution.

These are guidelines for civility. The Guidelines are offered because civility in the practice of Law promotes both the effectiveness and the enjoyment of the practice and economical client representation. The legal profession must strive for the highest standards of attorney behavior to elevate and enhance our service to justice. Uncivil or unprofessional conduct not only disserves the individual involved, it demeans the profession as a whole and our system of justice.

These voluntary Guidelines foster a level of civility and professionalism that exceed the minimum requirements of the mandated Rules of Professional Conduct as the best practices of civility in the practice of law in California. The Guidelines are not intended to supplant these or any other rules or laws that govern attorney conduct. Since the Guidelines are not mandatory rules of professional conduct, nor rules of practice, nor standards of care, they are not to be used as an independent basis for disciplinary charges by the State Bar or claims of professional negligence.

The Guidelines are intended to complement codes of professionalism adopted by bar associations in California. Individual attorneys are encouraged to make these guidelines their personal standards by taking the pledge that appears at the end. The Guidelines can be applicable to all lawyers regardless of practice area. Attorneys are encouraged to comply with both the spirit and letter of these guidelines, recognizing that complying with these guidelines does not in any way denigrate the attorney's duty of zealous representation.

SECTION 1. The dignity, decorum and courtesy that have traditionally characterized the courts and legal profession of civilized nations are not empty formalities. They are essential to an atmosphere that promotes justice and to an attorney's responsibility for the fair and impartial administration of justice.

SECTION 2. An attorney should be mindful that, as individual circumstances permit, the goals of the profession include improving the administration of justice and contributing time to persons and organizations that cannot afford legal assistance.

An attorney should encourage new members of the bar to adopt these guidelines of civility and professionalism and mentor them in applying the guidelines.

SECTION 3. An attorney should treat clients with courtesy and respect, and represent them in a civil and professional manner. An attorney should advise current and potential clients that it is not acceptable for an attorney to engage in abusive behavior or other conduct unbecoming a member of the bar and an officer of the court.

As an officer of the court, an attorney should not allow clients to prevail upon the attorney to engage in uncivil behavior.

An attorney should not compromise the guidelines of civility and professionalism to achieve an advantage.

SECTION 4. An attorney's communications about the legal system should at all times reflect civility, professional integrity, personal dignity, and respect for the legal system. An attorney should not engage in conduct that is unbecoming a member of the Bar and an officer of the court.

Nothing above shall be construed as discouraging the reporting of conduct that fails to comply with the Rules of Professional Conduct.

SECTION 5. An attorney should be punctual in appearing at trials, hearings, meetings, depositions and other scheduled appearances.

SECTION 6. An attorney should advise clients that civility and courtesy in scheduling meetings, hearings and discovery are expected as professional conduct.

In considering requests for an extension of time, an attorney should consider the client's interests and need to promptly resolve matters, the schedules and willingness of others to grant reciprocal extensions, the time needed for a task, and other relevant factors.

Consistent with existing law and court orders, an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests.

7

SECTION 7. The timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers.

SECTION 8. Written materials directed to counsel, third parties or a court should be factual and concise and focused on the issue to be decided.

SECTION 9. Attorneys are encouraged to meet and confer early in order to explore voluntary disclosure, which includes identification of issues, identification of persons with knowledge of such issues, and exchange of documents.

Attorneys are encouraged to propound and respond to formal discovery in a manner designed to fully implement the purposes of the California Discovery Act.

An attorney should not use discovery to harass an opposing counsel, parties or witnesses. An attorney should not use discovery to delay the resolution of a dispute.

SECTION 10. An attorney should consider whether, before filing or pursuing a motion, to contact opposing counsel to attempt to informally resolve or limit the dispute.

SECTION 11. It is important to promote high regard for the profession and the legal system among those who are neither attorneys nor litigants. An attorney's conduct in dealings with nonparty witnesses should exhibit the highest standards of civility.

SECTION 12. In a social setting or otherwise, an attorney should not communicate ex parte with a judicial officer on the substance of a case pending before the court, unless permitted by law.

SECTION 13. An attorney should raise and explore with the client and, if the client consents, with opposing counsel, the possibility of settlement and alternative dispute resolution in every case as soon possible and, when appropriate, during the course of litigation.

SECTION 14. To promote a positive image of the profession, an attorney should always act respectfully and with dignity in court and assist the court in proper handling of a case.

SECTION 15. An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning.

SECTION 16. An attorney should avoid even the appearance of bias by notifying opposing counselor an unrepresented opposing party of any close, personal relationships between the attorney and a judicial officer, arbitrator, mediator or court-appointed expert and allowing a reasonable opportunity to object.

SECTION 17. An attorney should respect the privacy rights of parties and non-parties.

SECTION 18. An attorney should negotiate and conclude written agreements in a cooperative manner and with informed authority of the client.

In addition to other applicable Sections of these Guidelines, attorneys engaged in a transactional practice have unique responsibilities because much of the practice is conducted without judicial supervision.

SECTION 19. In addition to other applicable Sections of these Guidelines, in family law proceedings an attorney should seek to reduce emotional tension and trauma and encourage the parties and attorneys to interact in a cooperative atmosphere, and keep the best interests of the children in mind.

SECTION 20. In addition to other applicable Sections of these Guidelines, criminal law practitioners have unique responsibilities. Prosecutors are charged with seeking justice, while defenders must zealously represent their clients even in the face of seemingly overwhelming evidence of guilt. In practicing criminal law, an attorney should appreciate these roles.

SECTION 21. Judges are encouraged to become familiar with these Guidelines and to support and promote them where appropriate in court proceedings.

---

ATTORNEY'S PLEDGE. I commit to these Guidelines of Civility and Professionalism and will be guided by a sense of integrity, cooperation and fair play.

I will abstain from rude, disruptive, disrespectful, and abusive behavior, and will act with dignity, decency, courtesy, and candor with opposing counsel, the courts and the public.

As part of my responsibility for the fair administration of justice, I will inform my clients of this commitment and, in an effort to help promote the responsible practice of law, I will encourage other attorneys to observe these Guidelines.

(Rev. May 4, 2010)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the
ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint,
an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR
and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to
any applicable local court rules and directions for contacting any court staff
responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded
under the Dispute Resolutions Program Act (DRPA), in counties that are
participating in the DRPA. This information may take the form of a list of the
applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR
process.

(b) A court may make the ADR Information Package available on its website as long as
paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant
along with the complaint. Cross-complainants must serve a copy of the ADR
Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY:          STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                               STATE:          ZIP CODE:<br>TELEPHONE NO.:                      FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY<br><br>For your protection and privacy, please press the Clear This Form button after you are done printing this form. |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
  ☐ Under section 1141.11 of the Code of Civil Procedure
  ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date: _____     _____     _____
                          (SIGNATURE OF PLAINTIFF OR ATTORNEY)       (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____     _____     _____
                          (SIGNATURE OF DEFENDANT OR ATTORNEY)       (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION

Electronically Filed by Superior Court of California, County of Orange, 01/11/2022 09:08:00 AM.
30-2021-01238022-CU-BT-CXC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By elhinguser, Deputy Clerk.
Case 8:22-cv-00195-JLS-KES Document 1 Filed 02/07/22 Page 60 of 65 Page ID #:60

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Pamela E. Prescott, Esq.  (SBN 328243)<br>Kazerouni Law Group, APC<br>245 Fischer Ave.<br>Suite D1<br>Costa Mesa, CA 92626<br><br>  TELEPHONE NO.: (800) 400-6808      FAX NO.: (800) 520-5523<br>  ATTORNEY FOR: Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
  STREET ADDRESS: 751 W. Santa Ana Blvd.
  MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701
  BRANCH NAME: Civil Complex Central

| PLAINTIFF: Manal Aleisa<br>DEFENDANT: Patagonia, Inc. | CASE NUMBER:<br>30-2021-01238022-CU-BT-CXC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Aleisa v. Patagonia, Inc. |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:
    a. [X] summons
    b. [X] complaint
    c. [X] Alternative Dispute Resolution (ADR) package
    d. [X] Civil Case Cover Sheet (served in complex cases only)
    e. [ ] cross-complaint
    f. [X] other (specify documents):
       Complex Dept Guidelines

3.  a. *Party served (specify name of party as shown on documents served):*
       Patagonia, Inc.

    b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)
       CT Corp., Agent for Service, Daisey Montenegro / Authorized Person

4.  Address where the party was served:
       330 N. Brand Blvd., Ste. 700, Glendale, CA 91203

5.  I served the party *(check proper box)*
    a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*01/06/2022  (2) at *(time):*12:25 PM
    b. [ ] **by substituted service.** On *(date):*                at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

       (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
       (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
       (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where copies were left (Code Civ. Proc., 415.20). I mailed the documents on *(date):*          from *(city):*          or [ ] a declaration of mailing is attached.
       (5) [ ] I attached a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Job Number SNO-2022000153

| PLAINTIFF: Manal Aleisa | CASE NUMBER: |
| DEFENDANT: Patagonia, Inc. | 30-2021-01238022-CU-BT-CXC |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*      (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify):* Patagonia, Inc.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name: Delbert Salgado

    Firm: Sano Attorney Service

b. Address: P.O. Box 1568, Riverside, CA 92502

c. Telephone number: (909) 425-2248

d. **The fee** for the service was: $71.50

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

        (i) ☐ owner ☐ employee ☒ independent contractor.

        (ii) Registration No.: PSC2448

        (iii) County: Orange

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/7/22

_____
Delbert Salgado
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**      Job Number SNO-2022000153

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 01/20/2022                    TIME: 01:33:00 PM          DEPT:  CX102

JUDICIAL OFFICER PRESIDING: Peter Wilson
CLERK: Eric Yu
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2021-01238022-CU-BT-CXC**  CASE INIT.DATE: 12/22/2021
CASE TITLE: **Aleisa vs. Patagonia, Inc.**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Business Tort

---

EVENT ID/DOCUMENT ID: 73682777
**EVENT TYPE:** Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 and 3.400:  Case is Complex.

Each party who has not paid the Complex fee of $1,000.00 as required by Government Code § 70616 shall pay the fee to the Clerk of the Court within 10 court days from date of this minute order. Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

**The Status Conference is scheduled for 04/29/2022 at 09:00 AM in Department CX102.**

Plaintiff shall, at least 5 court days before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware. Other parties who think it necessary may also submit similar summaries 3 court days prior to the hearing. DO NOT use the CMC (Case management Statement) form used for non-complex cases (Judicial Council Form CM-110).
All proposed orders (including those submitted pursuant to stipulation) must be submitted in 2 electronic formats. One copy is to be filed in Word (without attachments), and another copy in .pdf format with all attachments/exhibits attached to it. Failure to follow this rule may result in the proposed order not being brought to the attention of the Court in a timely fashion. Ensure that the proposed order is identified as a "Proposed Order."

Additional departmental information may be obtained by visiting the Court's website at:

COMPLEX CIVIL DEPARTMENT GUIDELINES –

---

CASE TITLE: Aleisa vs. Patagonia, Inc.                          CASE NO: **30-2021-01238022-CU-BT-CXC**

---

http://www.occourts.org/directory/civil/complex-civil/department-guidelines.pdf

COMPLEX CIVIL COURTROOM SCHEDULE & REQUIREMENTS - ADDITIONAL GUIDELINES FOR CX102 - http://www.occourts.org/directory/civil/complex-civil/calendar-schedule/civil-panel-schedule.html

CIVIL TENTATIVE RULINGS - http://www.occourts.org/directory/civil/tentative-rulings/

This case is subject to mandatory electronic filing pursuant to Superior Court Rules, County of Orange, Rule 352.  Plaintiff shall give notice of the Status Conference and the electronic filing requirement to all parties of record or known to plaintiff, and shall attach a copy of this minute order.

Clerk to give notice to Plaintiff and Plaintiff to give notice to all other parties.

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintif,,*
Manal Aleisa

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF ORANGE – UNLIMITED CIVIL

| | |
|---|---|
| **MANAL ALEISA,**<br>**Individually and On Behalf of All**<br>**Others Similarly situated**<br><br>**Plaintiff,**<br><br>v.<br><br>**PATAGONIA, INC., and**<br>**LOST COAST OUTFITTERS,**<br>**LLC**<br><br><br>**Defendants.** | Case No.: 30-2021-01238022-CU-BT-CXC<br><br><br>**PROOF OF SERVICE OF**<br>**JANUARY 20, 2022 MINUTE**<br>**ORDER RE: INITIAL STATUS**<br>**CONFERENCE** |

**PROOF OF SERVICE**

1

2

3
**PROOF OF SERVICE**

4
I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Kazerouni Law Group, APC, 245 Fischer Avenue, Suite

5
D1, Costa Mesa, CA 92626.  On January 21, 2022, I served the within document(s):

6
   • **JANUARY 20, 2022 MINUTE ORDER RE: INITIAL STATUS

7
   CONFERENCE**

8
[X] MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as

9
set forth below.

10
Patagonia, Inc.

11
CT Corporation System (Agent for service of process)
330 N Brand Blvd 6 WH

12
Glendale 91203

13
*Defendant Patagonia, Inc.*

14
   I am readily familiar with the firm's practice of collection and processing correspondence

15
for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

16
motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18
   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on January 21, 2022, at Costa Mesa, California.

19

20
PAMELA E. PRESCOTT

21

22

23

24

25

26

27

28